### GENERAL ELECTRIC URANIUM MANAGEMENT CORPORATION, Plaintiff,

v.

### UNITED STATES DEPARTMENT OF ENERGY, et al., Defendants.

#### Civ. A. No. 83–3049.

United States District Court, District of Columbia.

April 5, 1984.

---

John T. Boese, Richard H. Wyron, and Sam E. Fowler of Fried, Frank, Harris, Shriver & Kampelman, Washington, D.C., for plaintiff; John K. Restrick, Philadelphia, Pa., of counsel.

J. Paul McGrath, Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., Dennis G. Linder, Stephen E. Hart, and Thomas Millet, Attys., Dept. of Justice, Washington, D.C., for defendant; L. Dow Davis IV, Amy Shimamura, and William D. Luck, U.S. Dept. of Energy, Washington, D.C., of counsel.

Bruce H. Turnbull and Scott T. Maker of Weil, Gotshal & Manges, Washington, D.C., for amicus curiae, Westinghouse Elec. Corp.

CHARLES R. RICHEY, District Judge.

Before the court are defendants' motion to dismiss for lack of jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted; and plaintiff's motion for summary judgment. On March 30, 1984, the court issued its judgment and order, concluding that it had jurisdiction over plaintiff's suit and granting defendants' motion to dismiss for failure to state a claim upon which relief can be granted. The court writes now to explain those conclusions.

General Electric Uranium Management Corporation ("GEUMCO") is seeking to set aside the fee imposed by defendants for the disposition of its spent nuclear fuel ("SNF") under the Nuclear Waste Policy Act of 1982, 42 U.S.C. § 10101, *et seq.* ("the Waste Act"). That legislation created a comprehensive program for disposing of SNF and high-level radioactive waste, including the establishment of waste repository facilities under federal auspices. It also authorized the Department of Energy ("DOE") to contract with private owners and generators of SNF for disposal services. 42 U.S.C. § 10222(a)(1). GEUMCO objects to DOE's final rule establishing the one-time fee to be incorporated in DOE's standard contract, 48 Fed.Reg. 16590–16608 (April 18, 1983), claiming that it is arbitrary, capricious, and contrary to law because it exceeds the congressionally prescribed fee. For the reasons set forth below, the court finds that it has jurisdiction to hear this case, that plaintiff's objection is without merit, and that defendants are entitled to dismissal under Federal Rule of Civil Procedure 12(b) for failure to state a claim upon which relief can be granted.

### TECHNICAL AND STATUTORY BACKGROUND

Section 302 of the Waste Act provides for the creation of a "Nuclear Waste

Fund" to finance disposal operations. 42 U.S.C. § 10222. Owners and generators of SNF may contract with DOE for acceptance of title, subsequent transportation, and disposal. § 10222(a)(1). The fee to be imposed for DOE's services depends on *when* the fuel was used to generate electricity. For SNF used to generate electricity after April 7, 1983,[1] "the fee under paragraph (1) shall be equal to 1.0 mil per kilowatt-hour." § 302(a)(2). This is referred to as the "ongoing fee." In contrast, for SNF used to generate electricity *before* April 7, 1983, § 302(a)(3) provides that:

> "the Secretary shall ... establish a 1 time fee per kilogram of heavy metal in spent nuclear fuel, or in solidified high-level radioactive waste. Such fee shall be in an amount equivalent to an average charge of 1.0 mil per kilowatt-hour for electricity generated by such spent nuclear fuel ... to be collected from any person delivering such spent nuclear fuel."

42 U.S.C. §§ 10222(a)(2) and (a)(3).

It is the interpretation of this second fee provision, referred to as the "one-time fee," that is the focus of this litigation, since the parties agree on all material facts. All of the SNF held by GEUMCO was used to generate electricity before April 7, 1983, and so falls under § 302(a)(3). In addition, it is all "low-burnup fuel," because it was removed from a nuclear reactor before substantial quantities of fuel had been burned.[2] In contrast, "high-burnup fuel" has had greater amounts of fuel "burned" and will have generated more electricity per kilogram of mass than low-burnup fuel. GEUMCO contends that defendants must adopt a fee of one mill[3] per kilowatt-hour for the electricity generated by *its* low-burnup fuel. Instead, DOE's rule created four tiers of SNF, varying by degrees of burnup, and established different fees for each tier, which *average* one mill per kilowatt-hour. The difference to plaintiff between these two methods is substantial: under its view, GEUMCO would owe about four million dollars (Judson affidavit ¶ 9), while under DOE's formula it owes over twelve million dollars (Judson affidavit ¶ 8).

Upon examination of the language and legislative history of § 302(a) of the Waste Act, the court finds that DOE's rule is consistent with the statutory mandate and is a reasonable exercise of its discretion.

## JURISDICTION OVER PLAINTIFF'S CHALLENGE TO THE ONE–TIME FEE UNDER § 302 LIES IN THE DISTRICT COURT

Defendants mistakenly contend that jurisdiction over this case lies exclusively with the court of appeals. Although the Waste Act is silent on judicial review of agency action pursuant to § 302, plaintiff relies on this court's federal question jurisdiction, 28 U.S.C. § 1331, and the Administrative Procedure Act, 5 U.S.C. § 702. Defendants assert that a specific limited jurisdiction provision in the Waste Act serves to restrict *all* judicial review under the Act to the courts of appeals. Section 119(a)(1)(A) provides that:

> Except for review in the Supreme Court of the United States, the United States Courts of Appeals shall have original and exclusive jurisdiction over any civil action—
>
> [A] for review of any final decision or action of the Secretary, the President, or the Commission *under this part* ...

42 U.S.C. § 10139(a)(1)(A) (emphasis added).

The flaw in defendants' argument is that § 302 does not fall within the same "part" as § 119, *i.e.*, Part A of Subchapter I, but

---

**1.** The date was set by the statute as 90 days after January 7, 1983, the day the Act was signed into law by the President.

**2.** Fuel assemblies are removed when they are no longer capable of sustaining fission on an economical basis or for other operational reasons. The amount of electricity generated by fuel assemblies differs based on a variety of factors, such as the type of reactor, fuel design, time in use, and operational damage or defects.

**3.** The court adopts the preferred spelling of "mill" except in direct quotations to the Waste Act.

rather in Subchapter III. In the face of such clearly limited language as that in § 119, this court will not presume that Congress intended to commit all judicial review to the courts of appeals. Defendants' resort to the legislative history of § 302 to demonstrate that it originated in the same subtitle as the judicial review provision is simply inappropriate given the statute's plain language. If, as defendants contend, Congress inadvertently removed § 302 from the "part" committing judicial review to the courts of appeals as it restructured the legislation, it is an oversight for Congress, not this court, to correct. Similarly, the court will not presume that Congress erred in adopting different routes of review for different types of challenges to the Waste Act.

Defendants offer another line of reasoning for exclusive appellate court jurisdiction. Within Part A, along with § 119(a)(1)(A), is a general statement in § 111(b)(4) that one of the purposes of the Waste Act is to establish the Nuclear Waste Fund and to finance it from users' fees paid by waste generators. 42 U.S.C. § 10131(b)(4). Defendants contend that this "purposes" section brings plaintiff's case within the scope of the limited review section. However, all of the specific provisions for implementing the Waste Fund and assessing fees are contained in § 302. Both the Waste Act itself, 42 U.S.C. § 10101(29), and DOE's statements in the course of rulemaking, 48 Fed.Reg. 5458 and 48 Fed.Reg. 16590, refer to § 302 and not to § 111(b)(4) as the section creating the Nuclear Waste Fund. In summary, because plaintiff challenges agency action pursuant to § 302 and not § 111(b)(4) in this suit, and because judicial review is not explicitly restricted by § 119(a)(1)(A), jurisdiction lies in the district court.

## DOE'S RULE IS CONSISTENT WITH THE LANGUAGE, LEGISLATIVE HISTORY, AND PURPOSES OF THE WASTE ACT

To overturn DOE's one-time fee rule, GEUMCO must demonstrate that it is inconsistent with the Waste Act. *Chrysler Corp. v. Brown,* 441 U.S. 281, 308, 99 S.Ct. 1705, 1720, 60 L.Ed.2d 208 (1979); *United States v. Larionoff,* 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977); *Hofenberg v. Kaminstein,* 396 F.2d 684, 685 (D.C.Cir.), *cert. denied,* 393 U.S. 913, 89 S.Ct. 235, 21 L.Ed.2d 199 (1968). Courts should defer to an agency's views on the meaning of its governing legislation, *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 371–72, 93 S.Ct. 1652, 1661–62, 36 L.Ed.2d 318 (1973), although such interpretations are not controlling. Deference is particularly appropriate when an agency is drawing on its expertise, *Baltimore Gas & Electric Co. v. Natural Resources Defense Council, Inc.,* — U.S. ——, ——, 103 S.Ct. 2246, 2256, 76 L.Ed.2d 437 (1983), as DOE has done in setting the one-time fee, and when an agency is construing a new statute, such as the Waste Act. *Power Reactor Development Co. v. International Union of Electrical, Radio & Machine Workers, AFL–CIO,* 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961). Agency action is entitled to a presumption of regularity. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). In assessing the validity of the contested rule, the court looks to the language and legislative history of the Waste Act.

### 1. *DOE's rule is consistent with the language of § 302*

A comparison of § 302(a)(2) and § 302(a)(3) immediately reveals that Congress intended to adopt two different methods of imposing fees on the owners and generators of SNF. The ongoing fee, described in § 302(a)(2), is explicitly set: *"equal* to 1.0 mil per kilowatt-hour" (emphasis added). In contrast, § 302(a)(3) delegates authority to "the Secretary" to "establish a 1 time fee per kilogram of heavy metal ... in an amount equivalent to an average charge of 1.0 mil per kilowatt-hour ..." (emphasis added). Had Congress intended to fix the one-time fee, as it fixed the ongoing fee, it clearly could have

adopted the appropriate language, mirroring § 302(a)(2).[4] *See National Insulation Transportation Committee v. ICC*, 683 F.2d 533, 537 (D.C.Cir.1982). Instead, Congress gave the Secretary flexibility to determine the appropriate one-time fee, with the constraint that it must average one mill per kilowatt-hour.

Plaintiff attempts to explain away this difference by reference to the "physical circumstances of the fuel addressed by each provision." (*See* Memorandum in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendants' Motion to Dismiss, at 24.) It notes that while the ongoing fee is prospective and that the electricity generated can be metered, the one-time fee must be computed retroactively. This distinction fails to fully account for Congress' clear differentiation of "old" and "new" SNF in §§ 302(a)(2) and (a)(3).

Plaintiff also relies heavily on certain words in § 302(a)(3), *i.e.*, that the one-time fee be "*equivalent* to an average charge of 1.0 mil per kilowatt-hour for electricity generated by *such* spent nuclear fuel . . . to be collected from *any* person . . . ." This emphasis, however, does not require, as plaintiff argues, that DOE impose a fee of exactly one mill per kilowatt-hour for each individual purchaser of its disposal services. Determining whether things are "equivalent" depends on first deciding what to compare. DOE's calculation *does* yield a one-time fee "equivalent" to an industry-wide average of one mill per kilowatt-hour, although not necessarily "equivalent," for any individual purchaser, to the ongoing fee it would pay under § 302(a)(2). DOE's rule therefore does comply with the statutory language. Plaintiff's emphasis of the words "*any* person" and "*such* spent nuclear fuel" do not compel its reading of the statute, *i.e.*, that the one-time fee

must be levied so that it equals one mill per kilowatt-hour for each individual purchaser. Rather, "any person" merely identifies who is responsible for fee payments, and "*such* spent nuclear fuel" refers to fuel used to generate electricity before April 7, 1983.

In advocating its interpretation, plaintiff fails to explain adequately the statutory provision for an "*average* charge." Such language clearly contemplates some variation and vests discretion with the Secretary. Plaintiff's objection, in essence, is to the *degree* of variation and not to the *fact* of deviation from the one mill per kilowatt-hour standard. (*See* Complaint ¶ 24.)

2. *The legislative history of the Waste Act supports DOE's position*

The one-time fee was not part of the original Senate bill, S. 1662, which became the Waste Act. It was added by the Committee on Environment and Public Works "to cover the cost of long-term storage and disposal of nuclear waste and spent nuclear fuel generated as of the date of enactment." S.Rep. No. 282, 97th Cong., 1st Sess. 26 (1981). The Committee's report provides that the one-time fee "must be comparable" and "equivalent to" the ongoing fee of one mill per kilowatt-hour. *Id.* at 26, 34. As discussed above, such language is consistent with DOE's four-tiered, average formula.

In the House, legislation provided for a one-time fee without specifying an amount. It directed instead that "[t]he Secretary shall require each person entering into a contract for the disposal [of existing SNF] . . . to make payments at such levels as will ensure that such person will be required to pay a ratable portion of the costs of radioactive waste disposal activities . . . ." H.R. 3809, Sec. 124(a)(3), 97th Cong., 2d Sess. (1982). Commenting on the one-time fee, Representative Morris Udall, one of

---

**4.** Plaintiff contends that defendants' position in this case—that the different language allows it to impose different fees—conflicts with its position in another pending case, *Wisconsin Electric Power Co. v. DOE*, Civil Action No. 83–2066 (D.D.C. filed Aug. 8, 1983). That case presents the entirely unrelated question of whether the

ongoing fee is to be assessed on the *gross* amount of electricity generated, like the one-time fee, or on the *net* amount of electricity, as the *Wisconsin Electric* plaintiffs urge. Given the different subject matters of the litigation, this court finds no inconsistency in defendants' arguments.

the principal House sponsors of the legislation, stated that it "requires the Secretary to establish a one-time fee which will cover the costs of previously generated spent fuel and high-level radioactive waste." 128 Cong.Rec. H10523 Dec. 20, 1982). The bill finally passed largely tracked H.R. 3809, but contained the one-time fee language which had been added to S. 1662. *Id.*, H10525–H10544.

The one-time fee adopted by DOE satisfies the twin congressional mandates of full cost recovery and an equitably shared burden by owners and generators. Plaintiff mistakenly relies on the legislative history of the ongoing fee in its attack on DOE's one-time fee rule. For the ongoing fee, Congress chose to tie the fee directly to the electricity generated and not to the volume of SNF. 127 Cong.Rec. S10438 (Sept. 24, 1981) (remarks of Senator McClure). DOE unsuccessfully sought the authority to reconcile the ongoing fee to take account of different fuel burnup rates. *Nuclear Waste Disposal, 1981: Joint Hearings on S. 637 and S. 1662 Before the Senate Committee on Energy and Natural Resources and the Subcommittee on Nuclear Regulation of the Senate Committee on Environment and Public Works*, 97th Cong., 1st Sess. 681 (Oct. 5 & 6, 1981). In contrast, the one-time fee specifically delegated authority to DOE and provided for a volumetric assessment, *i.e.*, "per kilogram of heavy metal." § 302(a)(3). Nothing in the brief legislative history of the one-time fee indicates otherwise. Congress' decision to deny DOE the authority to reconcile the ongoing rate cannot be extrapolated to bar DOE's discretion in assessing the one-time fee. Indeed, Congress' choice to create two fee sections indicates that it recognized the need to treat the two categories of SNF differently.

**5.** Plaintiff disputes the 80% favorable comment rate claimed by defendants (*see* Plaintiff's Memorandum, *supra*, at 34, n. \*), but the tiered approach undoubtedly received broad support. DOE's February proposal called for three tiers,

## DOE'S ONE–TIME FEE RULE IS NOT ARBITRARY OR CAPRICIOUS

DOE's promulgation of the one-time fee rule was procedurally correct and represents a reasonable exercise of its discretion, within the parameters set by Congress. DOE first circulated a draft contract for implementing § 302(a) in January 1983. That proposal contained a one-time fee of exactly one mill per kilowatt-hour of electricity generated by individual spent fuel assemblies, the approach favored by plaintiff here. In February 1983, DOE published the text of a proposed contract in the Federal Register, including four alternative methods of calculating the one-time fee instead of the one earlier formula. 48 Fed.Reg. 5458 (Feb. 4, 1983). After a public hearing and the submission of written comments, DOE adopted the four-tier averaging approach, a refinement of the approach favored by the vast majority of commenters.[5] 48 Fed.Reg. 16590–16608 (April 18, 1983). It explained its decision by noting:

> [t]his approach was endorsed by many utilities because it avoids extremely low and extremely high fees. It sustains the principle of equity and fairness by requiring all generators and owners of the spent nuclear fuel to bear a reasonable share of disposal costs. Further, it corresponds more closely to program costs.

48 Fed.Reg. 16593. DOE rejected the individual assembly approach advocated by plaintiff,

> although it was supported by several commenters who said it is a straightforward approach that recognizes differences is [sic] assembly burnup due to initial cycle discharges, type of reactor, and structurally damaged or deformed fuel assemblies. In DOE's view, this approach weakens the fairness principle by unduly benefitting owners of low-burnup fuel. This approach also conflicts with the Congressional intent to

but a fourth and lower burnup range was added in the final rule to make it "more representative of the actual industrywide distribution of spent nuclear fuel, encompassing low, average and high burnup fuel." 48 Fed.Reg. 16593.

have those responsible for generating nuclear wastes and spent fuel bear a reasonable share of disposal costs. 48 Fed.Reg. 16593.

Plaintiff suggests that the change between DOE's January draft contract and the final rule in April represents questionable inconsistency. (*See* Plaintiff's Memorandum, *supra*, at 26.) Rather, it demonstrates the ordinary functioning of notice and comment rulemaking: applying its expertise in light of informed public comment, DOE chose one of several options and explained its decision.

DOE's choice of the four-tier method for calculating the one-time fee, while not compelled by the language or legislative history of the Waste Act, was a reasonable one. Section 302(a) specifically directs that fees should be "sufficient to offset expenditures." 42 U.S.C. § 10222(a)(1). This is in accordance with the Act's more general design of "ensur[ing] that the costs of carrying out activities relating to the disposal of such waste and spent fuel will be borne by the persons responsible for generating such waste and spent fuel." 42 U.S.C. § 10131(b)(4). Under the scheme plaintiff advocates, the one-time fee paid by owners of low-burnup fuel might not cover the fixed overhead costs like packaging, handling, and transportation. DOE's method, in contrast, assures that a base rate will cover costs, and favors neither owners of high-burnup or low-burnup fuel.[6]

The selection of a different formula than Congress imposed for the ongoing fee is justifiable in light of administrative concerns. The burnup levels of existing SNF are known and disposal costs can be calculated accordingly. It is an entirely different and more burdensome task to make such calculations for fuel still in reactors, or to await removal in order to assess fees

properly, a chore Congress chose not to impose on DOE. Since DOE's rule satisfies the congressional constraint of an average charge of one mill per kilowatt-hour, it is not arbitrary or capricious and this court will not substitute its judgment for that of the agency.

CONCLUSION

After satisfying itself that jurisdiction lies in the district court, the court concludes on the basis of the undisputed facts contained in the pleadings that DOE's one-time fee rule is consistent with the Nuclear Waste Policy Act of 1982 and is a reasonable exercise of the agency's discretion. Accordingly, the court issued its judgment and order on March 30, 1984, denying defendants' motion to dismiss for lack of jurisdiction and plaintiff's motion for summary judgment, but granting defendants' motion to dismiss on the alternative basis of failure to state a claim upon which relief can be granted.

---

6. Plaintiff relies on a report by the Congressional Office of Technology Assessment to refute defendants' claim that a one-mill per kilowatt-hour fee would be unfair to high-burnup fuel. (*See* Plaintiff's Memorandum, *supra*, at 32.) At that time, the Senate legislation under consideration contained only the ongoing fee. The difference is important because one factor in disposal costs is the heat of the SNF. Low-burnup

fuel is cooler than high-burnup fuel, making disposal cheaper because more total waste can be emplaced per acre of repository space. The high-burnup fuel subject to the one-time fee, however, will have been cooled in a storage pool before acceptance by DOE, substantially reducing the heat. (*See* Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at 13, n. 5.)