**WISCONSIN ELECTRIC POWER COMPANY, et al., Plaintiffs,**

v.

**Donald P. HODEL, Secretary, Department of Energy, Defendant.**

Civ. A. No. 83–2281.

United States District Court, District of Columbia.

July 18, 1984.

---

Jay E. Silbert, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., for plaintiffs.

Thomas Millet, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

This matter is before the Court on a motion to dismiss and on cross-motions for summary judgment. Plaintiffs are a number of electric utility companies who use or plan to use nuclear reactors to generate electric power in conformity with the Nuclear Waste Policy Act, 42 U.S.C. § 10101 *et seq.* ("the Act"). They seek judicial review of the standard form of nuclear waste disposal contract adopted by the Secretary pursuant to the Act after notice and comment in the rulemaking proceeding. Specifically, they challenge as unlawful, arbitrary, capricious, and an abuse of discretion contract provisions for calculation of the fee they must pay to the Department of Energy for the cost of removing nuclear waste that they create because the fee base would include electricity generated by a utility's reactor system, but consumed by the utility to operate its own plant and not sold directly to customers of the utility.

### I.

Section 10222(a)(1) of the Act authorizes the Secretary ("in the performance of his functions under this chapter") to contract "with any person who generates or holds title to high-level radioactive waste, or spent nuclear fuel ... for the ... disposal of such fuel." Under this section the contracts must provide for payment to the Secretary of fees sufficient to offset expenditures incurred with respect to disposal.

The portion of the statute specifically at issue here (42 U.S.C.A. § 10222(a)(2)) provides that

For electricity generated by a civilian nuclear power reactor and sold on or after the date 90 days after January 7,

1983, the fee under paragraph (1) shall be equal to 1.0 mil per kilowatt hour.

The legislative history is substantially as follows. In 1983, Congress enacted the Nuclear Waste Policy Act, 42 U.S.C. § 10101 *et seq.* Findings stated by Congress as its predicate for the Act, include, among other things, the following:

While the Federal Government has the responsibility to provide for the permanent disposal of high-level radioactive waste and ... spent nuclear fuel ..., the costs of such disposal should be the responsibility of the generators and owners of such waste and spent fuel.

42 U.S.C.A. § 10131(a)(4). Part A of Subchapter I of the Act states one of its purposes to be the establishment of

a Nuclear Waste Fund, composed of payments made by the generators and owners of such waste and spent fuel, that will ensure that the costs of carrying out activities relating to the disposal of such waste and spent fuel will be borne by the persons responsible for generating such waste and spent fuel.

42 U.S.C.A. § 10131(b)(4).

To develop a form of standard contract, as contemplated by section 10222(a), the Secretary turned to rulemaking "because this process presents the best opportunity to interested persons, particularly the affected parties, to participate...." 48 Fed. Reg. 5459 (1984). To that end, the Secretary published a proposed rule. He recited as an element of the legislative background that:

The key concept in the statutory financing mechanism is that owners and generators ... are required to bear the full costs of nuclear waste disposal activities by paying fees into the Nuclear Waste Fund established by the Act.

48 Fed.Reg. at 5458. The form of standard contract published with the proposed rule provided that

Effective April 7, 1983, Purchaser shall be charged a fee ... of 1.0 mil per kilowatt-hour on electricity generated and sold by Purchaser's nuclear power reactors.

Article VIII, A 1, 48 Fed.Reg. at 5464. Commentators attracted by the proposed rulemaking (proposed Article VIII of the standard contract) noted that the proposed language "did not account for or adequately reflect the Congressional intent regarding the method of establishing waste disposal charges" and was based upon the inaccurate premise that the words "generated ... and sold" meant to establish disposal charges based upon the "net" electricity. These commentators urged that the relevant language of the statute "should be read to require establishment of disposal charges based upon the electricity generated by a civilian nuclear reactor," i.e. the total of "gross" electricity generated. While the utilities themselves generally consume only a small fraction of the electricity they generate, and sell the remainder, the potential waste fees on this small increment are significant.

After considering these arguments, the Secretary stated the belief of the Department that the latter was the "proper interpretation" because use of the "net" rather than the "gross"

> would unfairly subject future users of electricity [in the rate charges passed by the Purchaser utility] to increased charges. The words "and sold on or after a date 90 days after enactment ..." should be read to establish a date certain for calculation of the Act's differing methods of establishing fees for disposal charges [i.e. past 90 days after enactment and prior to 90 days after enactment].

48 Fed.Reg. 16591 (1983).

## II.

Defendants' motion to dismiss is a threshold challenge to this Court's jurisdiction. The complaint invokes 28 U.S.C. § 1331(a), 28 U.S.C. § 2201 and 5 U.S.C. §§ 553 and 701. Defendant's motion to dismiss is based on the theory that jurisdiction to review actions of the Secretary of Energy in respect to administration of the Act is vested exclusively in the Court of Appeals. 42 U.S.C. § 10139(a)(1)(A), which lies within Subchapter I of Part A, gives the Court of Appeals "original and exclusive jurisdiction over a civil matter ... for review of any final decision of the Secretary ... *under this part.*" (Emphasis added.) Plaintiffs counter that the Court of Appeals' exclusive jurisdiction is limited to "this part," i.e. sections 10131 through 10145 which comprise Part A of Subchapter I of Chapter 108 of Title 42.

▪ Despite the statute's lack of clarity, defendant's argument is plausible. Section 10222, creating the Nuclear Waste Fund, and providing for the contracts (subsection (a)(1)) and fees (subsection (a)(2)) at issue here is physically included in Subchapter III of Chapter 108 rather than Part A of Subchapter I. However, the very first words of Section 10222(a)(1) are:

> In the performance of his functions under this *chapter,* the Secretary is authorized ..., etc. [Emphasis added.]

This reference to "chapter" should be enough, without more, to meld sections 10139(a)(1)(A) relating to exclusive jurisdiction and section 10222(a)(1), unless doing so would do serious violence to scheme of the Act. Neither the numbering, placement or cross referencing of this statute reflect model draftsmanship. So some violence is necessary to carry out many of Congress' plain purposes. Literal reliance on the words "part" and "chapter" would be misplaced. Moreover, all the reasons why any rulemaking by a department or agency should be reviewed directly by a Court of Appeals apply with full force here. The rulemaking record and the original fact findings were made by and for the Secretary. There is little or no fact collecting or fact finding role for a trial court. The Secretary's interpretation of the statute (unlike a trial court's) is cushioned by expertise and, in this case, by his (or his staff's) live experience with the proposal, hearing, mark-up, and enactment of the Act. The Court of Appeals must inevitably review this Court's interpretation of the Act, essentially *de novo.* A trial court's interpretation would be, at best, modest

assistance to the Court of Appeals.* For all these reasons the Court concludes that, although the issue is not free from doubt, the Court of Appeals does have exclusive jurisdiction here, and that the motion to dismiss should be granted.

### III.

■ Even if this Court had jurisdiction, the ultimate result should be the same. As the Supreme Court has recently emphasized, a specialized agency's contemporaneous interpretation of a newly enacted statute is entitled to great deference, and should be contradicted by a court only when it is crystal clear that the agency's interpretation of the statute is an impermissible one. *Compare Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). At issue here is the meaning of the words "generated ... and sold," as used in 42 U.S.C.A. § 10222(a)(2), for purposes of calculating the cost of nuclear waste disposal to utilities which consume some of the electric power that they generate from waste generating nuclear reactors. All the signals in the preamble to the Act and in the legislative history point to Congress' intent to have the utility which created the waste pay currently for its disposal. To achieve this clear purpose of the Act, the Secretary responded to comments on the proposed regulations by a final regulation which based the disposal charge on the "gross" rather than the "net" cost of disposal. He plausibly construed the words "and sold" as establishing a date certain for calculating the different methods of establishing fees.

As stated in connection with discussions on the jurisdiction question, this statute is not a model of draftsmanship. There was some mystery at the hearing on these motions as to where the language invoked by plaintiffs came from in the first place. A subsequent July 11, 1984, joint pleading sheds some light, but fails to identify the source of the precise phrasing at issue here. There were indications at the argu-

ment from which it may be inferred that it was introduced into a markup of a bill by plaintiffs but never scruticized or commented on by the interested agency or by Congressmen and Senators. Whatever the source of the words at issue, the defendant's construction was "in the context of this particular program ... a reasonable one." *Chevron v. National Resources Defense Council, supra.* In the circumstances *Chevron* teaches that the defendant's interpretation, which fairly reflects the manifest intent of Congress, should be honored by a reviewing court. Accordingly, if this Court has jurisdiction, it would grant defendant's motion for summary judgment.

---

* *Cf. In re Subpoenas Duces Tecum Fulbright &* *Jaworski,* 738 F.2d 1367, 1375 (D.C.Cir.1984).