**STATE OF TENNESSEE**

v.

**John HERRINGTON, Secretary of the United States Department of Energy.**

**Civ. A. No. 3–85–0959.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Nov. 26, 1985.

W.J. Michael Cody, Atty. Gen., John Knox Walkup, Chief Deputy Atty. Gen., Frank J. Scanlon, Deputy Atty. Gen., Nashville, Tenn., for plaintiff.

Joe E. Brown, U.S. Atty., James C. Thomason, Asst. U.S. Atty., Nashville, Tenn., Wells D. Burgess, Land and Natural Resources Div., U.S. Dept. of Justice, Wash-

---

ington, D.C., Gregory Fess, Dept. of Energy, Gen. Counsel, Washington, D.C., for defendant.

### MEMORANDUM

WISEMAN, Chief Judge.

This is a case of first impression and involves an issue of pressing national importance—the safe storage of nuclear waste.[1] The case arises out of a dispute between the State of Tennessee and the United States Department of Energy ("DOE") over whether the DOE followed proper statutory procedures in identifying sites in Tennessee as candidates for the temporary storage of nuclear waste in Monitored Retrievable Storage ("MRS") installations.

The State of Tennessee seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202; or, in the alternative, for a writ of mandamus under 28 U.S.C. § 1361 to compel the Secretary of Energy ("Secretary") to comply with certain provisions of the Nuclear Waste Policy Act of 1982 ("NWPA"), 42 U.S.C. §§ 10101–10226 (1982). Recognizing the jurisdictional question raised by this action, the State has filed an identical complaint in the Court of Appeals for the Sixth Circuit, and asked the court of appeals to stay its proceedings until such time as this Court has decided the action.

The Secretary has moved to dismiss the complaint asserting lack of jurisdiction in this Court, insisting that the statutory scheme of the NWPA vests exclusive jurisdiction in the Court of Appeals to review actions of the Secretary in the administration of the NWPA.

The motion to dismiss is *denied.* For the reasons hereinafter set forth, this Court finds that it has jurisdiction of this case, and that the exclusive jurisdiction vested in the Courts of Appeals by section 119 of the NWPA[2] does not apply to Part C of Subchapter 1 of the NWPA, section 141.[3]

### I. THE ACT

After years of unsuccessfully attempting to enact comprehensive legislation dealing with the urgent national problem of nuclear waste disposal, Congress passed the Nuclear Waste Policy Act of 1982, Pub.L. No. 97–425, 96 Stat. 2202 (1983). The purpose of the NWPA is "to establish programs for the development of repositories for the safe permanent disposal of high level nuclear waste and spent fuel, and to provide for the safe stabilization and long-term protection of sites for the disposal of low level radioactive waste." H.R.Rep. No. 491(I), 97th Cong., 2d Sess. 26, *reprinted in* 1982 *U.S.Code Cong. & Ad.News* 3792. The federal waste management program articulated by the NWPA authorizes processes for both the permanent placement and the temporary storage of nuclear waste produced by civilian facilities.[4] The focus of this waste management program is on the development of permanent, deep repositories for nuclear waste.[5] The NWPA estab-

---

**1.** Although this Court recognizes that there are distinctions among the many forms of nuclear waste, the Court will use the phrase "nuclear waste" in this opinion to include the types of waste produced in civilian commercial activities covered by the Nuclear Waste Policy Act of 1982, 42 U.S.C. §§ 10101–10226 (1982), including high-level radioactive waste, transuranic waste, low-level waste, and spent nuclear fuel.

**2.** 42 U.S.C. § 10139 (1982).

**3.** 42 U.S.C. § 10161 (1982).

**4.** The NWPA authorizes the development of permanent repositories in sections 111–125, comprising Part A, "Repositories for Disposal of High-Level Radioactive Waste and Spent Nuclear Fuel," of Subchapter I. 42 U.S.C. §§ 10131–

10145 (1982). In Part B of the statute, sections 131–137, 42 U.S.C. §§ 10151–10157, Congress authorizes the "Interim Storage Program," which is intended to provide federal storage capacity to utilities which cannot safety provide their own interim storage capacity for spent nuclear fuel at the site of each civilian nuclear power reactor, until the permanent repositories are constructed. 42 U.S.C. § 10151(b). Part C of the NWPA, section 141, which describes the process for siting Monitored Retrievable Storage facilities, is described in detail in the body of this opinion since it is the subject of this action. 42 U.S.C. § 10161 (1982).

**5.** *See* 42 U.S.C. §§ 10131–10145 (1982).

lishes a timetable for the Secretary to identify states containing "potentially acceptable sites" for a permanent repository and the mechanism for participation of states and Indian tribes in the sitting process.[6] Ultimately, the process results in the President's recommendation to Congress of one site for development of the first permanent repository.[7] The state or Indian tribe affected may submit to Congress a notice of disapproval of the President's site recommendation,[8] and the site shall be disapproved unless Congress overrides the state veto by passing a resolution of repository sitting approval within 90 days.[9]

Congress also enacted Part C of Subchapter I of the NWPA, which deals with Monitored Retrievable Storage, as a "backup" to the repository program.[10] As its name implies, MRS basically requires the continuous monitoring of the waste stored in such a facility. Such waste may be retrieved at a later time, perhaps decades later, for placement in a permanent repository.[11] Congress has made it clear in the NWPA that MRS is not as desirable as the permanent repository system in furthering the national goal of the safe disposal of nuclear waste. Congress has authorized the Secretary to develop plans for MRS as the contingency plan for the long-term storage of nuclear waste in the event that Congress determines at a future date that

such facilities are needed as part of the national nuclear waste management system. The legislative history to the NWPA makes it clear that MRS is not an alternative to the permanent repository system but is to be developed in conjunction with the repositories, if at all. H.R.Rep. No. 491(I), 97th Cong., 2d Sess. 44, *reprinted in* 1982 *U.S.Code Cong. & Ad.News* 3792, 3810. Section 141(h) of the NWPA[12] incorporates several of the sections and subsections of Part A of Subchapter I which deal with participation of states and Indian tribes in the selection of sites for permanent repositories. Therefore, states and Indian tribes have some of the same rights to participate in the selection of potential MRS sites and the same limited veto power as they have in the selection of sites for permanent repositories.

## II. SUMMARY OF ARGUMENTS

The issue of whether original and exclusive jurisdiction is vested in the United States courts of appeals or the district courts to hear a challenge to the procedures followed by the Secretary in selecting potential sites in Tennessee for MRS installations involves a question of statutory construction. The State presents an uncomplicated, literal reading of the language of sections 119[13] and 141[14] in argu-

---

**6.** *See* 42 U.S.C. §§ 10131–10138 (1982).

**7.** *See* 42 U.S.C. § 10134 (1982).

**8.** 42 U.S.C. §§ 10136(b)(2), 10138(a) (1982).

**9.** 42 U.S.C. § 10135(c) (1982). For a summary of this siting process, see *State of Texas v. U.S. Dept. of Energy,* 764 F.2d 278, 279–80 (5th Cir. 1985).

**10.** 42 U.S.C. § 10161 (1982).

**11.** For a study on MRS technology, see *The Monitored Retrievable Storage Concept, A Review of Its Status and Analysis of Its Impact on the Waste Management System,* U.S. Dept. of Energy, Dec. 1981, *cited in* H.R.Rep. No. 491(I), 97th Cong., 2d Sess. 41 n. 2, *reprinted in* 1982 *U.S.Code Cong. & Ad.News* 3792, 3807 n. 2.

**12.** 42 U.S.C. § 10161(h) (1982).

**13.** Section 119, 42 U.S.C. § 10139, is the only substantive statutory review provision in the NWPA. The part of section 119 which bears on

the present action is subsection (a), which states:

> (1) Except for review in the Supreme Court of the United States, the United States Courts of Appeals shall have original and exclusive jurisdiction over any civil action—
> (A) for review of any final decision or action of the Secretary, the President, or the Commission under this part;
> (B) alleging the failure of the Secretary, the President, or the Commission to make any decision, or take any action, required under this part;
> (C) challenging the constitutionality of any decision made, or action taken, under any provision of this part;
> (D) for review of any environmental impact statement prepared pursuant to the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.) with respect to any action under this subtitle, or as required under section 10155(c)(1) of this title, or alleging a failure to

**4.** See note 4 on page 926.

ing that this Court has jurisdiction over this case. The State argues that Congress incorporated certain provisions contained within Part A of Subchapter I, relating to state participation, into the MRS subtitle of Part C by specifically citing these provisions in section 141(h), and impliedly rejected the application of all other provisions of Part A to the MRS development process. The State also argues that the clear language of section 119(a), which vests jurisdiction in the court of appeals, demonstrates the clear Congressional intent that the section applies *only* to certain actions arising "under this part" (referring to Part A of Subchapter I) [15] and to actions arising under provisions outside of Part A of Subchapter I which are specifically enumerated in section 119(a)(1)(D)–(F). The State does not challenge the jurisdiction granted the courts of appeals over actions arising under these sections; however, the state relies on what it believes is the clear language of section 119(a), which does not refer to Part C of Subchapter I, concerning Monitored Retrievable Storage, in vesting original and exclusive jurisdiction in the courts of appeals, to exclude actions arising under Part C from the jurisdictional provision.

The Secretary presents a more convoluted analysis of the Act's construction. The Secretary states that the State of Tennessee's complaint alleges that he failed to comply with the provisions providing for state participation in the MRS siting process. The Secretary argues that the State thereby states a cause of action pursuant to section 119(a)(1)(B) which vests jurisdiction over actions alleging the failure of the Secretary to take any action required "under this part" in the courts of appeals.[16] Arguing that the phrase "under this part" should not be read literally, the Secretary claims that since the procedures for state participation which are incorporated in section 141(h), relating to MRS, are located in Part A of Subsection I, therefore, the judicial review section of Part A, section 119, must also apply to actions involving section 141(h). The Secretary also argues that the fact that there is no judicial review provision in Part C of Subchapter I, while there is in Part A, militates in favor of finding exclusive jurisdiction vested in the courts of appeals. Finally, the Secretary argues that the most important reason for finding that Congress vested jurisdiction in the courts of appeals is the public policy behind avoiding lengthy litigation and duplicative review over a national program of urgent concern.

### III. ANALYSIS

 The Court finds the Secretary's position without merit. The Judicial Code of 1911, ch. 2, § 24, 36 Stat. 1087, 1091–94

---

prepare such statement with respect to any such action;

(E) for review of any environmental assessment prepared under section 10132(b)(1) or 10155(c)(2) of this title; or

(F) for review of any research and development activity under subchapter II of this chapter.

(2) The venue of any proceeding under this section shall be in the judicial circuit in which the petitioner involved resides or has its principal office, or in the United States Court of Appeals for the District of Columbia.

42 U.S.C. § 10139(a) (1982). The only other provision in the NWPA mentioning statutory review, section 221, which is contained within Subchapter II, merely refers back to section 119(a)(1) by stating "[j]udicial review of research and development activities under this subchapter shall be in accordance with the provisions of section [119] of this title." 42 U.S.C. § 10201 (1982).

**14.** Section 141, which is contained within Part C of Subchapter I, pertains to Monitored Retrievable Storage. The part of this section which is at issue in this case is subsection (h), which states:

Any facility authorized pursuant to this section shall be subject to the provisions of section 10135[115], 10136(a)[116(a)], 10136(b) [116(b)], 10136(d)[116(d)], 10137[117], and 10138[118] of this title. for purposes of carrying out the provisions of this subsection, any reference in sections 10135[115] through 10138[118] of this title to a repository shall be considered to refer to a monitored retrievable storage facility.

42 U.S.C. § 141(h) (1982).

**15.** *See supra* note 13.

**16.** 42 U.S.C. § 10139(a)(1)(B) (1982).

(1911) (current version of 28 U.S.C. §§ 1331–1361), removed all original and exclusive jurisdiction from what are known today as the United States circuit courts of appeals. Although Congress since that time has restored original jurisdiction to the courts of appeals over certain types of cases,[17] the statutes which have done so have been express in their grant of jurisdiction and have been construed strictly. Section 119 of the NWPA expressly vests jurisdiction in the courts of appeals over the actions specifically enumerated in subsection *a*, thus expressly repealing the Judicial Code of 1911; however, actions arising under the MRS provision, section 141, are not mentioned as being within that section's scope. Therefore, for jurisdiction over actions arising under section 141 to be vested in the courts of appeals pursuant to section 119, an implied repeal of the Judicial Code of 1911 is required. It is a universally recognized principle that repeals of statutes by implication are not favored. *See, e.g., United States v. Will,* 449 U.S. 200, 221–22, 101 S.Ct. 471, 484, 66 L.Ed.2d 392, 410 (1980); *Allen v. McCurry,* 449 U.S. 90, 99, 101 S.Ct. 411, 417, 66 L.Ed.2d 308, 316 (1980); *Executive Limosine Service, Inc. v. Goldschmidt,* 628 F.2d 115, 120 (D.C.Cir. 1980). The intention of the legislature to repeal a statute must be "clear and manifest," *see, e.g., Watt v. Alaska,* 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed. 80, 88 (1981) (quoting *United States v. Borden Co.,* 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181, 191 (1939), and absent some affirmative showing of a Congressional intention to repeal, the only permissible justification for finding repeal by implication is when earlier and later statutes cannot be reconciled. *See, e.g., Tennessee Valley Authority v. Hill,* 437 U.S. 153, 189–90, 98 S.Ct. 2279, 2299, 57 L.Ed.2d 117, 143 (1978);

*Izaak Walton League of America v. Marsh,* 655 F.2d 346, 366 (D.C.Cir.), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 657, 70 L.Ed.2d 630 (1981); *Equitable Life Assurance Society of the United States v. Grosvenor,* 426 F.Supp. 67, 71 (W.D.Tenn. 1976), *aff'd,* 582 F.2d 1279 (6th Cir.1978) (unpublished), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). Congress has not expressed a clear intention in any of the legislative materials[18] to vest original jurisdiction over actions arising under the MRS provision, section 141, in the courts of appeals, so as to impliedly repeal the Judiciary Act of 1911. Accordingly, jurisdiction over this action is vested in this Court.

Other well-established principles of statutory construction also mandate the conclusion that jurisdiction over this action is vested in this Court. The primary function of the courts in construing legislation is to effectuate the intent of the legislature. *Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525, 533 (1975). Legislative intent may be ascertained from the clear language of the statute itself or from legislative materials which clearly reveal this intent, *In re Arnett,* 731 F.2d 358, 361 (6th Cir.1984). Courts should look first to the language of a statute, however, to determine its legislative purpose. *See, e.g., Reiter v. Sonotone Corp.,* 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931, 936 (1979); *Securities & Exchange Commission v. Ambassador Church Finance/Development Group, Inc.,* 679 F.2d 608, 611 (6th Cir., 1982). The Sixth Circuit Court of Appeals has stated that "[w]here a statute is unambiguous, it should be given effect according to its literal language." *Hilliard v. United States,* 310 F.2d 631, 632 (6th Cir.1962).

17. *See infra* note 26 and accompanying text.

18. After having conducted an exhaustive search of the legislative materials of the NWPA, the Court has found no Congressional intent to vest exclusive jurisdiction in the courts of appeals over any actions arising under the NWPA other than those specifically enumerated in section 119(a) of the Act, 42 U.S.C. § 10139(a). In particular, neither the legislative history to section 119(a), nor section 141(h), demonstrates any legislative intent to vest exclusive jurisdiction in the courts of appeals over actions which challenge the procedures used by the Secretary of Energy in selecting potential sites for MRS installations. *See* H.R.Rep. No. 491(I), 97th Cong., 2d Sess. 56, *reprinted in* 1982 *U.S.Code Cong. & Ad.News* 3792, 3822–23.

Accordingly, courts may not discover a congressional intent, under the guise of statutory construction, which is contrary to the clear language of the statute itself. *Hall v. Secretary, Health, Education & Welfare*, 600 F.2d 556, 561 (6th Cir.1979).[19]

■ The Court finds that section 119(a) of the NWPA clearly limits the original and exclusive jurisdiction of the courts of appeals to those actions specifically enumerated in subsections (1)(A)–(F).[20] The Secretary asks this Court to ignore the clear language of subsections (1)(B) and (1)(C) which vests jurisdiction in the courts of appeals over actions challenging certain decisions made, or actions taken, "under this part." The phrase "this part" refers to Part A of Subchapter I of the NWPA, and this part only. The internal consistency of the statute in at least two instances supports the Court's conclusion that jurisdiction over this action is vested in the district courts. First, the terms "part," "subtitle," [21] "title," and "subchapter" were used intentionally and with deliberate, discrete meaning by Congress because those terms define the structure of the NWPA. Second, in section 141(h),[22] Congress enumerated the provisions of Part A of Subchapter I which were incorporated in Part C. Section 119 was *not* one of the sections which was incorporated to apply to Monitored Re-

trievable Storage.[23] Both of these internal consistencies indicate that Congress intended to vest jurisdiction over MRS actions in the district courts.

In reaching this decision the Court is in disagreement with two courts of the District of Columbia Circuit which have faced an analogous question. *See General Electric Uranium Management Corp. ("GEUMCO") v. United States Department of Energy*, 764 F.2d 896 (D.C.Cir. 1985); *Wisconsin Electric Power Co. v. Hodel*, 626 F.Supp. 424 (D.D.C.1984) *aff'd.*, 778 F.2d 1 (D.C.Cir.1985). Both cases involved challenges to fees which utility companies using or planning to use nuclear reactors to generate electric power are required to pay into the Nuclear Waste Fund pursuant to section 302 of the NWPA.[24] Section 302 is contained within Subchapter III of the NWPA. The *Wisconsin Electric* court held that literal reliance on the term "part" is misplaced because section 302(a)(1),[25] authorizes the Secretary of Energy "[i]n the performance of his functions *under this chapter*" to enter into contracts with those who generate or hold title to nuclear waste to provide the funds for nuclear waste disposal. (Emphasis added). The court felt that the reference to "chapter" in section 302(a)(1) somehow was

---

**19.** *See supra* note 18 and accompanying text.

**20.** 42 U.S.C. § 10139(a)(1)(A)–(F) (1982).

**21.** Although the statute itself does not clearly define the term "subtitle," the legislative history to the Act makes clear that the term, as used in section 119(a)(1)(D), is interchangeable with the term "part." For an example of this fact, see H.R.Rep. No. 491(I), 97th Cong., 2d Sess. 50 & 56, *reprinted in* 1982 *U.S.Code Cong. & Ad.News* 3792, 3816 & 3822 (Part A of Subchapter I is referred to as Subtitle A, and the legislative history to section 119(a)(1) also refers to Part A in this manner.)

**22.** 42 U.S.C. § 10161(h) (1982).

**23.** The Secretary's argument that the courts of appeals have exclusive jurisdiction over actions arising under section 141(h) because that provision incorporates several provisions of Part A of Subchapter I leads to the incongruous result

that jurisdiction over actions arising under that section would be vested in the courts of appeals, while jurisdiction over actions arising under other MRS provisions, section 141(a)–(f), would be vested in the district courts. The Secretary certainly does not intend for this result to occur.

**24.** 42 U.S.C. § 10222 (1982). *GEUMCO* involved a challenge to the one-time fee charged utilities for spent nuclear fuel used to generate electricity before April 7, 1983, pursuant to section 302(a)(3) of the NWPA, 42 U.S.C. § 10222(a)(3). *Wisconsin Electric* involved a challenge to the ongoing fee for spent nuclear fuel used to generate electricity on and after April 7, 1983, pursuant to section 302(a)(2) of the NWPA, 42 U.S.C. § 10222(a)(2). Congress established the ongoing fee, and ordered the Secretary of Energy to promulgate the one-time fee, which he established by rulemaking proceedings. Art. VIII, A.2, 10 C.F.R. § 961.11 (1985).

**25.** 42 U.S.C. § 10222(a)(1) (1982).

enough to "meld" that section with section 119(a)(1)(A), which is contained within Part A of Subchapter I. That finding, together with the practical reason stated by the court that the court of appeals would have a "rulemaking record" upon which to base its findings, led the district court to conclude that original jurisdiction is vested in the courts of appeals over any action arising under section 302, 42 U.S.C. § 10222.

The Court of Appeals for the District of Columbia in *GEUMCO* carefully traced through the provisions and the structure of the Act, and took a very broad view of the original and exclusive jurisdiction of the courts of appeals under the NWPA. Noting that Congress expressed its goal to establish a Nuclear Waste Fund in section 111(b)(4), which is contained within Part A of Subchapter I of the NWPA,[26] the *GEUMCO* court found that section 302,[27] which is contained within Subchapter III, incorporates by reference the "functional responsibilities" of the Secretary of Energy under Part A of Subchapter I, including the establishment and administration of the Nuclear Waste Fund.[28] *GEUMCO*, 764 F.2d at 902. The court found that the structure of the Act supports the view that it would be "singularly incongruous" for fee questions to be subject to review in both the district courts and courts of appeals. *Id.* The court concluded that from whatever vantage point it approached the statutory construction problem presented by section 302, it invariably concluded that Congress intended to vest original and exclusive jurisdiction over actions raising this issue in the courts of appeals.

These two opinions do not shake this Court's belief that Congress intended to vest original and exclusive jurisdiction over MRS actions in the district courts. Opinions of courts of sister circuits are persuasive, but not binding on this Court. These two courts overlook the fact that Congress has not repealed the provisions of the Judicial Code of 1911, ch. 2, § 24, 36 Stat. 1087, 1091–94 (1911) (current version at 28 U.S.C. §§ 1331–1361), so as to vest jurisdiction in the courts of appeals over actions not specifically enumerated in section 119(a)(1).[29] Absent a clear and specific Congressional directive to relinquish jurisdiction, this is the trial level court under our judicial scheme. Rewriting a statute is not the province of the judiciary. For this Court to read the term "part" out of the statute is both presumptuous and violative of the rules of statutory construction above. This Court finds the statutory language clear, and not subject to judicial revision.[30]

The thorough analysis of the NWPA articulated by the District of Columbia Court of Appeals in *GEUMCO* court merits further discussion. The *GEUMCO* opinion is distinguishable from the case at hand, and, to the extent that *GEUMCO* is not distinguishable, this Court disagrees with its holding. The *GEUMCO* court cited three reasons for holding that original and exclusive jurisdiction over nuclear waste fee questions was vested in the courts of appeals:

First, despite the statute's lack of clarity, we find every indication from those sections of the statutes relied on by DOE, as well as from related sections, and from the structure of the statute as a whole, that Congress intended that the court of appeals would have original and exclusive jurisdiction in cases of this sort. Second, the legislative history, although not illuminating on this question, certainly does not compel a result contrary to the one we reach here. Third, the policy

---

**26.** 42 U.S.C. § 10131(b)(4) (1982).

**27.** 42 U.S.C. § 10222 (1982).

**28.** The *GEUMCO* court cited the *Wisconsin Electric* opinion with approval on this point. 764 F.2d at 902 n. 32.

**29.** *See supra* note 13.

**30.** In reaching this conclusion, this Court agrees with the opinion of the lower court in *GEUMCO*. See *General Electric Uranium Management Corp. v. U.S. Dept. of Energy*, 584 F.Supp. 234, 236–37 (D.D.C.1984) (Richey, J.), *rev'd*, 764 F.2d 896 (D.C.Cir.1985).

considerations underlying this case, and articulated in other judicial decisions covering analogous statutes, overwhelming support our conclusions.

*GEUMCO,* 764 F.2d at 901. As previously stated, this Court believes that rules of statutory construction compel a contrary conclusion as to the first justification. This case, however, is distinguishable from *GEUMCO* because, unlike the Nuclear Waste Fund, MRS is not mentioned in Part A of Subchapter I of the NWPA. The process undertaken by the *GEUMCO* and *Wisconsin Electric* courts to "meld" section 119 with section 302 cannot rationally be achieved between section 119 and section 141, the MRS provision.

The second justification stated by the *GEUMCO* court was that there is no explanation in the legislative history for the physical separation of the fee provisions of section 302 from the judicial review provisions in section 119. Neither is there an explanation in the legislative history for the separation, although somewhat less physically removed from one another, of the MRS provision of section 141 from the judicial review provisions of section 119. As previously stated,[31] however, this Court is very hesitant to divine a Congressional intent to vest jurisdiction over MRS actions exclusively in the courts of appeals on the ground that the legislative history is silent.

The *GEUMCO* court stated three policy considerations weighing in favor of the court's conclusion on jurisdiction. Citing the public policy of avoiding duplicative

judicial review and the attendant delay and expense involved, the court stated that "in administrative appeals, "where it is unclear whether review jurisdiction is in the district court or the court of appeals the ambiguity is resolved in favor of the latter." " 764 F.2d at 903 (quoting *Denberg v. United States Railroad Retirement Board,* 696 F.2d 1193, 1197 (7th Cir.1983), *cert. denied,* 466 U.S. 926, 104 S.Ct. 1706, 80 L.Ed.2d 180 (1984)). The *GEUMCO* court next stated that, because there were no factual findings to be made due to the extensive rulemaking record in the case, the court of appeals would review exactly the same record as would be reviewed by a district court.[32] Third, the court stated that vesting original jurisdiction in the courts of appeals promotes the Congressional goals of predictability and efficiency in dealing with the pressing national concern of the safe disposal of nuclear waste. *Id.* at 904.

This Court concedes the importance of the public policy considerations articulated by the *GEUMCO* court. The goals of judicial efficiency and predictability and the avoidance of duplicative review are laudable ones. The Nuclear Waste Policy Act, however, establishes a unique method of review in section 119. As earlier stated, Congress has restored original jurisdiction to the courts of appeals in piecemeal fashion since the Judiciary Act of 1911 abolished such jurisdiction. Today, numerous statutes vest original and exclusive jurisdiction in the courts of appeals to review administrative action.[33] Such statutes,

31. *See supra* note 18 and accompanying text.

32. The *GEUMCO* court stated that "even without an extensive record or hearing before the agency, it is rare that the factfinding capacity of the district court is required in judicial review of administrative agency actions." 764 F.2d at 903 & n. 38 (citing *Florida Power & Light Co. v. Lorion,* — U.S. —, —, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643, 656 (1985)). This simple declaration presumes, of course, that an agency record in fact exists.

33. Some of the more widely used provisions vesting exclusive jurisdiction in the courts of appeals over certain governmental orders are as follows: the Hobbs Act, 28 U.S.C. §§ 2342–2350, concerning the Federal Communications Com-

mission, the Federal Maritime Commission, the Nuclear Regulatory Commission, and the Interstate Commerce Commission; the Securities Act, 15 U.S.C. § 77i; and the Securities Exchange Act, 15 U.S.C. § 78j; concerning the Securities and Exchange Commission; the Federal Aviation Act, 49 U.S.C. § 1486, concerning the Federal Aviation Administration; and the Immigration and Nationality Act, 8 U.S.C. § 1105a, concerning the Immigration and Naturalization Service. *See generally* G. Edles & J. Nelson, *Federal Regulatory Process: Agency Practices & Procedures* § 8.4, at 180 (1981 & Supp.1984). Despite the fact that Congress very easily could resolve the prickly question of whether a court of appeals or a district court has jurisdiction by a statutory amendment, it

however, anticipate that the applicable federal agency or commission will develop an administrative record which the courts of appeals may review. In this case, an administrative record does not exist. If original jurisdiction over MRS actions was vested in the courts of appeals, the Court of Appeals for the Sixth Circuit would be compelled to hear proof in this case on the issue of whether or not the Secretary of Energy followed the proper statutory procedures in identifying sites in Tennessee as candidates for MRS installations. Since district courts are well-equipped to develop a record for review, the Court feels this point is further evidence that Congress intended that jurisdiction over MRS actions lie in the district courts.

## IV. CONCLUSION

For the foregoing reasons, the Court holds that subject matter jurisdiction over the State of Tennessee's claim lies exclusively in the district courts. Whether this result comports with the national policy of the speedy resolution of actions challenging the nuclear waste management plan is a matter for Congress to decide, not the courts.

## ORDER

For the reasons set forth in the memorandum opinion filed contemporaneously herewith, the motion to dismiss for lack of jurisdiction of the subject matter is DENIED. Because this Court is of the opinion that this order involves a controlling question of law as to which there are substantial grounds for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation, an immediate appeal is authorized pursuant to the provisions of 28 U.S.C. § 1292(b).

has not done so. *See* K. Davis, *Administrative Law Treatise* 134 (2nd ed. 1983). Courts must continue to consider this question. For a short

listing of recent cases, see *GEUMCO,* 764 F.2d at 903 nn. 35–38.